**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **M.M.,** ) | ) |
| Plaintiff ) | ) |
| v. ) | ) Case No. 25-cv-10514-DJC |
| **VGW US, INC., VGW HOLDINGS US, INC., and VGW LUCKYLAND, INC.,** ) | ) |
| Defendants. ) | ) |

**MEMORANDUM AND ORDER**

**CASPER, C.J.**                                                                     January 6, 2025

**I.     Introduction**

Plaintiff M.M. ("M.M.") has filed this lawsuit as a putative class action against Defendants VGW US, Inc. ("VGW US"), VGW Holdings US, Inc. ("VGW Holdings US") and VGW Luckyland, Inc. ("VGW Luckyland") (collectively, "VGW") alleging violations of Mass. Gen. L. c. 93A and 137 and asserting a claim for unjust enrichment.[1]  D. 1-2.  VGW has moved to compel arbitration and for a stay of the court proceedings pursuant to the Federal Arbitration Act ("FAA"),

---

[1] On July 29, 2025, the Court ordered M.M. to file his true name under seal with the Court and seek leave to proceed under a pseudonym.  D. 27.  M.M. then moved to proceed pseudonymously, D. 28, which VGW opposed, D. 35.  Although the Court is skeptical that M.M. that anonymity would be warranted for the life of this litigation, the Court ALLOWS M.M.'s motion, D. 28, because the Court ultimately agrees with VGW that M.M.'s claims must be resolved in arbitration.  If this case returns to the active docket, the Court may reconsider this matter on the motion of either party.

9 U.S.C. § 1 *et seq.*, on the ground that the dispute is covered by arbitration agreements.  D. 15.  For the reasons stated below, the Court ALLOWS VGW's motion.

## II.     Standard of Review

When ruling on a motion to compel arbitration, the Court typically looks to "the complaint and the record materials submitted in support of or opposition to the motion."  Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 171 n.1 (1st Cir. 2021).  "[D]istrict courts should apply the summary judgment standard to evaluate motions to compel arbitration under the FAA."  Id. at 175.  Accordingly, the Court "must construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  Id.; Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 171 (1st Cir. 2022).

## III.    Factual Background

VGW develops and publishes "online casino-themed social games" including, as relevant here, games on two platforms:  Luckyland Slots and Chumba Casino.  D. 1-8 ¶ 2; see D. 1-2 ¶¶ 81-82.  Caterina Cavallaro, Associate General Counsel of VGW's parent company, attested that VGW Luckyland owns and operates Luckyland Slots and that a nonparty affiliate of VGW, VGW Malta Ltd., owns and operates Chumba Casino.  D. 1-8 ¶ 3.

M.M. alleges that Luckyland Slots and Chumba Casino are illegal gambling websites, D. 1-2 ¶ 1.  M.M. further alleges that VGW "work[s] in conjunction with at least three other related entities—VGW Malta Ltd., VGW Group, and VGW Games—and participate[s] and support[s] operation of [Luckyland Slots and Chumba Casino] in the United States and processing U.S. gambling winnings."  Id. ¶ 82.  M.M. is domiciled in Rhode Island but has played Luckyland Slots and Chumba Casino games while in Massachusetts.  Id. ¶ 76.  M.M. struggles with gambling addiction and has "lost money" playing Luckyland Slots and Chumba Casino games "within the last four years."  Id.

To play games on either Luckyland Slots or Chumba Casino, a prospective user must first register an account on the respective platform. D. 17 ¶ 7. At all relevant times, the initial account registration page for Luckyland Slots displayed on the bottom, in white text on a dark background: "No purchase necessary. By creating an account, you agree to the Terms of Service and privacy policy. By signing up, you also agree to receive emails from LuckyLand Slots." Id. ¶¶ 12-13. A webpage containing the Terms of Service ("Luckyland Terms") was hyperlinked, and the text "Terms of Service" appeared in blue font. Id. The final account registration page for Luckyland Slots required a prospective user to click a circle next to the following message, in relevant part: "I confirm the following: I am at least 18 years old; I have read the Terms of Service." Id. ¶¶ 14-15. The hyperlinked words "Terms of Service" appeared in green, underlined font on a blue background, and clicking the hyperlink directed a prospective user to a webpage containing the Luckyland Terms. Id. At all relevant times, the account registration page for Chumba Casino required a prospective user to click a checkbox next to the following message, in relevant part: "I confirm the following: I am at least 18 years old; I agree to the Terms of Use and Privacy Policy." Id. ¶¶ 19-20. The hyperlinked words "Terms of Use" appeared on the registration page in white, bold, underlined font on a black background, and clicking the hyperlink directed a prospective user to a webpage containing the Terms and Conditions ("Chumba Terms"). Id. Whenever Luckyland Slots and Chumba Casino update their respective terms of service (together, the "Terms"), a user "must confirm his or her acceptance of all material updates to the terms" to continue to access games. Id. ¶ 9.

Each of the Terms includes a section titled "Dispute Resolution and Agreement to Arbitrate on an Individual Basis" (the "Arbitration Agreements"). D. 17-1 § 24 (emphasis deleted); D. 17-2 § 24 (emphasis deleted). The Arbitration Agreements provide, in relevant part:

> By agreeing to these Terms of Service, and to the extent permitted by applicable law, you and VGW Group agree that any and all past, present and future disputes, claims or causes of action between you and VGW Group arising out of or relating to these Terms of Service, the Platform and Games, the formation of these Terms of Service or any other dispute between you and VGW Group or any of VGW Group's licensors, distributors, suppliers or agents, and whether arising prior to or after your agreement to this clause 24, (collectively, "**Dispute(s)**") will be governed by the procedure outlined below.  You and VGW Group further agree that any arbitration pursuant to this clause 24 shall not proceed as a class, group or representative action.
>
> . . . .
>
> **We Both Agree to Arbitrate.**  By agreeing to these Terms of Service, and to the extent permitted by applicable law, you and VGW Group each and both agree to resolve any Disputes – including any Dispute concerning the enforceability, validity, scope or severability of this agreement to arbitrate – through final and binding arbitration as discussed herein.
>
> . . . .
>
> **Arbitration Procedures and Fees.**  You and VGW Group agree that JAMS ("**JAMS**") will administer the arbitration under its Streamlined Rules in effect at the time arbitration is sought ("**JAMS Rules**").  Those rules are available at www.jamsadr.com.

D. 17-1 § 24 (emphases in original); D. 17-2 § 24 (replacing "Terms of Service" with "Terms and Conditions").

These versions of the Terms were in effect when M.M. last engaged with Luckyland Slots and Chumba Casino.[2]  D. 17 ¶¶ 16, 21.  Moreover, "[t]he Terms have at all relevant times contained identical class action waivers and arbitration agreements requiring users to arbitrate their disputes with [VGW] on an individual basis, unless they timely opt out of the arbitration agreement."  Id. ¶ 10.  M.M. "could not have played or made purchases on either platform unless he affirmatively accepted the" Terms.  Id. ¶ 11.

---

[2] While M.M. did not disclose his identity to VGW before VGW filed its motion to compel, D. 17 ¶ 11, his counsel has represented that M.M. last played on Chumba Casino on January 2, 2025, and last played on Luckyland Slots "around the same time."  D. 18-1 at 2-3.

IV.     **Procedural History**

M.M. initially filed this action in Suffolk Superior Court on January 8, 2025, on behalf of himself and a proposed class. D. 1-2. On March 4, 2025, VGW removed the case to this Court. D. 1. VGW now has moved to compel arbitration and stay the case. D. 15. The Court heard the parties on the pending motion and took the matter under advisement. D. 32.

V.      **Discussion**

The "FAA compels judicial enforcement of a wide range of written arbitration agreements." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001). The purpose of the Act is to put arbitration agreements on the "same footing as other contracts." Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974) (quoting H.R. Rep. No. 68-96, at 1 (1924)). Accordingly, under the FAA, a "written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he FAA was designed to promote arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 345 (2011), and "[s]ection 2 embodies the national policy favoring arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).

A "party who is seeking to compel arbitration must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011)).[3]

---

[3] M.M. alleges he "has no contract with [VGW] and neither [sic] are identified in the websites' Terms and Conditions as third party beneficiaries," D. 1-2 ¶ 63, but he has not otherwise advanced this argument in response to VGW's motion. See generally D. 19; D. 26. VGW Holdings US and VGW Luckyland are parties to the Luckyland Terms, D. 17-1 § 1 at 4, and it is

Where "there is a clear and unmistakable delegation of arbitrability issues," however, the Court's inquiry is more limited. See Bossé v. N.Y. Life Ins. Co., 992 F.3d 20, 28 (1st Cir. 2021) (citing Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 69 (2019)). "Under this framework, a court has a somewhat straightforward task when presented with a 'delegation clause' -- an agreement to submit to arbitration those issues relating to the scope, validity, and enforceability of an arbitration agreement." Toth v. Everly Well, Inc., 118 F.4th 403, 410 (1st Cir. 2024). If there is a valid delegation agreement between the parties, "the FAA compels courts to send the entire

---

at least arguably that VGW US counts as one of the "related parties" referenced in the same term. Id. It is less clear whether any defendant entity is a party to the Chumba Terms. VGW argues each defendant entity may invoke the Arbitration Agreements because (1) the parties delegated any non-signatory issue to an arbitrator, (2) the entities are parties to the Terms or (3) M.M. should be estopped from avoiding arbitration with VGW. D. 16 at 11-13. The Court agrees VGW can invoke the Arbitration Agreements based, at least, on the doctrine of equitable estoppel. That doctrine enables a non-signatory to compel arbitration where (1) the signatory must rely on the terms of the agreement in asserting its claims against the non-signatory or (2) a signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories. Steel-Rogers v. Glob. Life Sci. Sols. USA, LLC, 624 F. Supp. 3d 10, 17 (D. Mass. 2022); see D. 16 at 13.

To assess whether M.M. has advanced sufficient allegations of concerted misconduct, the Court looks to the complaint. Machado v. System4 LLC, 471 Mass. 204, 215 (2015). M.M. refers to the defendant entities collectively. See generally D. 1-2. M.M. also alleges the defendant entities "work in conjunction with at least three other related entities—VGW Malta Ltd., VGW Group, and VGW Games—and participate and support operation of the websites in the United States and processing U.S. gambling winnings." Id. ¶ 82. Although VGW Malta Ltd. and VGW Games are not defendants, they are parties to the Chumba Terms. D. 17-2 § 1 at 4; see Steel-Rogers, 624 F. Supp. 3d at 12, 19 (allowing non-signatory defendant to compel arbitration with signatory plaintiff). Accordingly, as M.M. "fail[s] to distinguish between defendants," the Court concludes he has alleged interdependent and concerted misconduct and is estopped from avoiding arbitration with VGW. See Tissera v. NRT New England, 438 F. Supp. 3d 115, 123 (D. Mass. 2020); Machado, 471 Mass. at 215-16.

The Court also notes that the Terms identify each defendant entity as a "Payment Administration Agent" and state that such agent "will have the same rights, powers and privileges that we have under these Terms of Service and will be entitled to exercise or enforce their rights, powers and privileges as our agent or in their own name." D. 17-1 §§ 1, 8.21; D. 17-2 §§ 1, 8.21 (replacing "Terms of Service" with "Terms and Conditions").

action to arbitration" unless the party opposing arbitration successfully challenges "the formation of the contract or the specific validity of the delegation provision." See id.

### A. VGW Has Shown the Formation Requirements Were Met

The party seeking to compel arbitration bears the burden of proving that the parties have formed an agreement. Air-Con, 21 F.4th at 173. The Court applies state contract law to determine whether an arbitration agreement exists. Id. at 174. Challenges to formation can include a claim that "one of the essential elements (offer, acceptance, and consideration) is missing" or that "one party never agreed to the terms of the contract, that a signatory did not possess the authority to commit the principal, or that the signor lacked the mental capacity to assent." Nat'l Fed'n of the Blind v. Container Store, Inc., 904 F.3d 70, 81 (1st Cir. 2018).

The Terms each include a choice-of-law provision stating that Delaware law governs their interpretation with the exception of the Arbitration Agreements, which purport to be governed by the FAA. D. 17-1 §§ 24, 25.14; D. 17-2 §§ 24, 25.14. M.M. argues that the Terms should be construed under Massachusetts law despite the choice-of-law provisions and that "the result would be the same" under either Massachusetts or Delaware law. D. 19 at 24-26. VGW cites Massachusetts law in its motion, D. 16 at 9-13, and does not respond to M.M.'s choice-of-law argument in its reply, D. 23. Where the parties analyze the Terms under Massachusetts law (and do not suggest a different outcome under Delaware law), the Court does so as well here.

#### 1. M.M. Challenges Validity Rather than Formation

As an initial matter, M.M. argues that the alleged illegality of the Terms is a formation issue that the Court, rather than an arbitrator, must decide because it goes to the element of consideration. D. 19 at 18-19. The Court disagrees. First, M.M. argues legality must be a formation issue because a court will treat a contract for an illegal purpose "as if it had never been made." Id. at 19 (quoting United States v. Mardirosian, 602 F.3d 1, 7 (1st Cir. 2010)). This

language originates in Massachusetts Municipal Wholesale Electric Co. v. Town of Danvers, 411 Mass. 39 (1991): "When adjudicating rights between parties to a contract that is void ab initio, courts treat that contract as if it had never been made." Id. at 55. M.M.'s reading, however, is undermined by the language that immediately follows: "Such treatment is, of course, a legal fiction. In reality, an agreement, under which the parties performed, did exist prior to the court's decision that it is void. The legal fiction of voiding ab initio, therefore, is applied only with the view of accomplishing justice or effectuating public policy." Id. (citations omitted). M.M.'s characterization of legality is foreclosed by the Supreme Court's decision in Buckeye. The Buckeye Court, faced with a contract purportedly void as illegal, reiterated that a challenge to the validity of a contract as a whole "must go to the arbitrator," even if this results in a court "enforc[ing] an arbitration agreement in a contract that the arbitrator later finds to be void." Buckeye, 546 U.S. at 448-49. M.M. asserts that "[n]either [Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395 (1967),] or Buckeye involved a dispute over . . . void contracts." D. 19 at 21. This argument ignores that Buckeye, citing Prima Paint, expressly rejected the lower court's "reli[ance] on the distinction between void and voidable contracts" under state law. See Buckeye, 546 U.S. at 446. M.M.'s argument that "in this Circuit, courts distinguish between void and voidable contracts," D. 19 at 24, fares no better: "[a]s a matter of federal law, [an] arbitration clause is unaffected even if the substance of the contract is otherwise void or voidable." Sleeper Farms v. Agway, Inc., 506 F.3d 98, 103 (1st Cir. 2007). The First Circuit has expressly recognized that unlike a formation challenge, "a challenge to validity requires consideration of the enforceability of [an] agreement and if it is void or voidable." Nat'l Fed'n of the Blind, 904 F.3d at 81.

8

Second, M.M. cites two Massachusetts cases for the proposition that "[i]f all or part of the consideration [for a contract] is illegal, then that element of contract formation is missing." D. 19 at 19. In Wolff v. Perkins, 254 Mass. 10 (1925), the Supreme Judicial Court explained that a note based upon illegal consideration was void as "against public policy." Id. at 12. The Massachusetts Appeals Court in Hastings Associates, Inc. v. Local 369 Building Fund, Inc., 42 Mass. App. Ct. 162 (1997), similarly reaffirmed the general rule that illegal contracts are void on public policy grounds. Id. at 173-79. Neither case stands for the proposition that illegality is a formation rather than validity issue, and M.M. himself argues that wagering contracts are void on public policy grounds. See D. 19 at 17. A reasonable reading is that these cases are addressing validity rather than formation. See, e.g., O'Donnell v. Bane, 385 Mass. 114, 116 n.1 (1982) (recognizing that "the real question is whether [a] promise is unenforceable on the grounds of public policy and not whether the promise is in some respect 'illegal'"); T.F. v. B.L., 442 Mass. 522, 527-28 (2004) (explaining that judge's "permissible" finding that there was implied "parenthood" contract did not answer question of "whether the court [could] enforce" contract on public policy grounds);[4] Myers v. Meinrath, 101 Mass. 366, 367 (1869) (noting that illegal contracts "are not altogether inoperative" as they "may be executed by the parties, and then the same principle of public policy which leads courts to refuse [to enforce them] will prevent the court from acting to relieve either party from the consequences"); Mardirosian, 602 F.3d at 7 (recognizing that under federal and Massachusetts case law, "contracts for illegal purposes are void as a matter of public policy"); see also Epic Sys. Corp. v. Lewis, 584 U.S. 497, 525-26 (2018) (Thomas, J., concurring) (noting that

---

[4] M.M. cites T.F. to suggest the severability principle is inapplicable here, D. 26 at 3, but this is unavailing. The Supreme Judicial Court specifically explained that its "authority to enforce the lawful portion of an otherwise illegal contract depends on whether that portion is severable from the larger agreement." T.F., 442 Mass. at 530. Valid arbitration agreements are severable from otherwise void contracts "[a]s a matter of federal law." Sleeper Farms, 506 F.3d at 103.

9

illegality is public policy defense rather than formation defect); Ferrandino & Son Inc. v. WMG Dev. LLC, No. 6:23-cv-00679, 2023 WL 3985520, at *4 (W.D. La. June 13, 2023) (opining that "state law cannot overcome the federal severability doctrine merely by characterizing an illegality defense as a question of contract formation").

### 2.   *M.M. Assented to the Terms*

Even construing M.M.'s challenge as one to formation, the Court concludes VGW has demonstrated that the parties formed agreements through the Terms. To "determine whether parties have formed a valid contract, Massachusetts courts apply a reasonableness test" that requires reasonable notice and reasonable manifestation of assent to a contract's terms. Toth, 118 F.4th at 410. VGW presented the Arbitration Agreements to M.M. as part of "clickwrap" agreements, which "require[] a user to affirmatively accept [the] terms by clicking a checkbox but do[] not require the user to view or scroll through those terms." Id. at 411. VGW has met its burden of demonstrating that, for purposes of resolving the present motion, the parties formed an agreement to arbitrate.

VGW may show that M.M. had either actual or reasonable notice of the Terms. Good v. Uber Techs., Inc., 494 Mass. 116, 127 (2024). At a minimum, M.M. had reasonable notice. M.M. does not argue otherwise. See generally D. 19; D. 26. The Court evaluates reasonable notice based on the totality of the circumstances including (1) the nature and size of the transaction, (2) the interface and form of the contract and (3) whether the notice conveys the full scope of the terms and conditions. Good, 494 Mass. at 128. First, with respect to the "nature and size of the transaction," a reasonably prudent consumer may not realize that registering for free accounts to play games on Luckyland Slots and Chumba Casino would "be accompanied by extensive contractual conditions." See id. at 129. Second, however, the Luckyland Slots and Chumba Casino account registration interfaces "focused the reasonably prudent consumer on the terms

being offered" for the use of the platforms.  See id. at 130.  On both platforms, a prospective user would have been informed that by creating an account, he agreed to the relevant Terms.  D. 17 ¶¶ 12, 14, 19; see Good, 494 Mass. at 130.  The interfaces "conveyed that the terms were readily available through a hyperlink," Good, 494 Mass. at 133, and displayed the hyperlinks in a contrasting font color or underlined, D. 17 ¶¶ 14, 15, 19, 20.  The registration interfaces encouraged a prospective user to review the respective Terms by requiring the user to click a box affirming he had done so.  See Good, 494 Mass. at 132; D. 17 ¶¶ 14, 15, 19.  Finally, because the Luckyland Slots and Chumba Casino account registration interfaces expressly communicated the respective Terms and conspicuously linked them, D. 17 ¶¶ 13, 20, VGW's notice conveyed the full scope of the Terms.  See Good, 494 Mass. at 139.  Additionally, any user who registered accounts on the platforms prior to September 16, 2024, would have been presented with pop-ups when the relevant Terms went into effect requiring that the user affirmatively agree to the updated, hyperlinked Terms before he could continue using the platforms.  D. 17 ¶¶ 18, 23.[5]  Based on the totality of the circumstances, the Court concludes that M.M. had reasonable notice of the Terms.  See Good, 494 Mass. at 139; see also Fair Gaming Advocs. MA LLC v. VGW Holdings Ltd., No. 2384-CV-02451, 2024 WL 5279408, at *1 (Mass. Super. Ct. Dec. 12, 2024) (noting that "the features for agreeing to [the Terms] were at least as clear and thorough as those that Massachusetts and federal courts have upheld in other cases").

In evaluating reasonable manifestation of assent, the Court considers the connection between the action manifesting assent and the Terms.  Good, 494 Mass. at 142.  Here, to create an account on Luckyland Slots, M.M. first encountered a registration page that included:  "[b]y

---

[5] M.M. alleges he "lost money" on the platforms "within the last four years," D. 1-2 ¶ 76, but has not identified when he registered his accounts.

11

creating an account you agree to the Terms of Service and privacy policy." D. 17 ¶¶ 12-13. M.M. had to click "Create New Account" to advance in the registration process. Id. To finalize his account registration, M.M. had to check a box confirming that he had reviewed the hyperlinked Luckyland Terms before separately clicking "Create Account." Id. ¶¶ 14-15. The first page in the registration process had already warned M.M. that "creating an account" indicated his acceptance of the hyperlinked Luckyland Terms and had required him to click "Create New Account." See id. ¶¶ 12-15; cf. Kauders v. Uber Techs., Inc., 486 Mass. 557, 580 (2021) (noting that "DONE" is "less clear than[] other affirmative language such as 'I agree'" and does not signify either account creation or acceptance of terms and conditions). On the Chumba Casino platform, M.M. was required to check a box confirming that he "agree[d] to the Terms of Use," which were hyperlinked, before he could create an account. D. 17 ¶¶ 19-20. And to the extent M.M.'s account creation predated September 16, 2024, he was required to affirmatively "agree to" the relevant, hyperlinked Terms when they became available before he could continue his use. Id. ¶¶ 9, 18, 25. The Court, therefore, concludes that M.M. reasonably manifested his assent to the Terms. See Good, 494 Mass. at 143.

       3.   *The Agreements Are Supported by Consideration*

Moreover, as to formation, there was consideration for the agreements here. M.M. received, at least, access to the Luckyland Slots and Chumba Casino platforms in exchange for his assent to the Terms. See Doe v. Trs. of Bos. Coll., 892 F.3d 67, 89 (1st Cir. 2018) (explaining that consideration requires detriment to promisee or corresponding benefit to promisor); D. 17-1 § 4 (granting limited license to access Luckyland Slots); D. 17-2 § 4 (granting limited license to access Chumba Casino). Moreover, mutual promises to arbitrate are considered adequate consideration. Bourque v. Rollins, Inc., 764 F. Supp. 3d 11, 18 (D. Mass. 2025); see Toth, 118 F.4th at 413 n.6. VGW has met its burden.

B.      **The Delegation Provisions Are Valid**

"[I]t is a mainstay of the [FAA's] substantive law that attacks on the validity of [a] contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.'" Nitro-Lift Techs., L.L.C. v. Howard, 568 U.S. 17, 20-21 (2012) (per curiam) (quoting Preston v. Ferrer, 552 U.S. 346, 349 (2008)). In turn, where the parties delegate determination of the arbitration agreement's validity to the arbitrator, a party is limited to challenging the delegation provision itself in court. Toth, 118 F.4th at 410. Here, it is undisputed that the Arbitration Agreements contain broad delegation provisions requiring the parties to arbitrate issues related to "the enforceability, validity, scope or severability of" the Arbitration Agreements themselves. D. 17-1 § 24.2; D. 17-2 § 24.2. The parties dispute whether M.M. has challenged the delegation provisions. VGW argues that he has not, and that the arbitrator must decide M.M.'s challenge to the validity of the Terms as a whole. D. 16 at 13; D. 23 at 2-8. M.M. responds that he has challenged the specific validity of the Arbitration Agreements and delegation provisions. D. 26 at 2-3.

Assuming *arguendo* that M.M. has challenged the delegation provisions of the Arbitration Agreements, the Court nevertheless concludes that his challenge fails. M.M. argues that the Arbitration Agreements are not severable from the Terms "because [each] arbitration provision is **itself** premised on illegal gambling consideration." D. 19 at 8 (emphasis in original); see id. at 20-21. But as the Court has already noted, "a mutual promise to arbitrate constitutes effective consideration," and the First Circuit has explained that this is the very reason "an arbitration agreement can be severed from an otherwise ineffectual contract." See Toth, 118 F.4th at 409. While this Court is not bound by the Alabama Supreme Court's decision in Macon County Greyhound Park, Inc. v. Hoffman, 226 So. 3d 152 (Ala. 2016), a case M.M. relies upon to support this argument, D. 19 at 20, on this point it offers a useful comparison. M.M. selectively quotes the

13

court's explanation that "the consideration for [the relevant] agreement to arbitrate [was] the ability to participate in an electronic-bingo game," rendering the arbitration agreement at issue itself void. Hoffman, 226 So. 3d at 167; D. 19 at 20.  While M.M. argues that "[t]he same reasoning applies here," D. 19 at 20, he ignores that the court there noted that it was "undisputed" that the underlying agreements were "gambling contracts" that the court had "repeatedly held" to be illegal under Alabama law, Hoffman, 226 So. 3d at 168-69, and that it was analyzing an "arbitration clause in the official bingo rules," which specifically required the parties to arbitrate disputes "[a]s a condition of participating in any bingo game." Id. at 167 (emphasis in original). Here, the parties here contest legality and the Terms of the arbitration clauses do not contain the same language. D. 17-1 § 24.2; D. 17-2 § 24.2.  As the delegation provisions in the Terms are valid, the parties will still litigate M.M.'s other validity challenges—they will simply do so before an arbitrator, pursuant to their agreements.  See, e.g., M.M. et al. v. Sweepsteakes Ltd., No. 25-cv-11481-RGS, at 4 (D. Mass. Nov. 20, 2025).[6]

### C. VGW's Requested Relief

VGW requests that the Court stay this action pending arbitration.  D. 15 at 1; D. 16 at 15. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." Smith v. Spizzirri, 601 U.S. 472, 478 (2024).  Accordingly, the Court will stay the case.

---

[6] M.M. requests that the Court "permit limited discovery on the illegality issue and set an evidentiary hearing." D. 19 at 27.  A hearing under section 4 of the FAA "is required only if there is a genuine issue of material fact for which a hearing would be necessary." Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc., 455 F.3d 7, 15 (1st Cir. 2006).  Moreover, any such hearing must be limited "to the question of whether the parties agreed to arbitrate." Air-Con, 21 F.4th at 175.  For the reasons stated above, an evidentiary hearing is not warranted here.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS VGW's motion to compel arbitration, D. 15, and stays the proceedings pending the arbitration.

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge